1998-NMSC-003

954 P.2d 52

**STATE of New Mexico, Petitioner–Appellee,**

v.

**JONATHAN B., Respondent–Appellant.**

**No. 24614.**

Supreme Court of New Mexico.

Dec. 12, 1997.

Rehearing Denied Jan. 27, 1998.

William A. L'Esperance, Albuquerque, for petitioner-appellee.

Tom Udall, Attorney General, M. Victoria Wilson, Assistant Attorney General, Santa Fe, for respondent-appellant.

## OPINION

MINZNER, Justice.

[1]   Jonathan B. appealed his convictions, obtained pursuant to a guilty plea in children's court, to the Court of Appeals. The Court of Appeals certified the appeal to this Court because it raised issues apparently similar to the companion case of *State v. Anthony T.*, NMCA 17,205, slip. op. (March 4, 1997), *cert. quashed*, ⸺ N.M. ⸺, ⸺ P.2d ⸺ (1997). Having determined that the issues presented in these companion cases are distinct, we address only the issues appealed by Jonathan. Jonathan contends that the trial court did not comply with the Rules of Criminal Procedure in accepting his plea and that his plea was involuntary and unknowing because the trial judge did not adequately inform Jonathan of the potential consequences of the plea. We affirm.

## I.

[2]   In July 1994, Jonathan and his cousin, Anthony T., broke into two houses in Socorro and removed property belonging to the respective occupants. On both occasions, the occupants were not at home. At the second house, the youths also obtained keys to a truck and drove away in the vehicle. After a high-speed chase of the truck by the police, Jonathan and Anthony were arrested. Jonathan was seventeen years old at the time of these incidents. While in jail, Jonathan escaped and was later apprehended.

[3]   After his arrest, the State, in three separate petitions, charged Jonathan in children's court with a total of approximately twenty counts related to the burglaries and to Jonathan's escape from jail. In addition, the State filed a timely notice of intent to invoke adult sentence on all counts except the count alleging an escape from jail.

[4]   Following an agreement between Jonathan's attorney and the prosecutor, the parties proposed a disposition to the court on the day the trial was to commence. The trial court held a hearing on the record discussing the agreement, at which the prosecutor, Jonathan's attorney, and Jonathan were all present. The judge engaged in a discussion of the proposed agreement with the prosecutor and the defense attorney. In addition, the judge addressed Jonathan personally. Both the court and the prosecution indicated that the maximum sentence for the crimes to which Jonathan was pleading guilty would be twenty-two-and-one-half years. The court entered a stipulation outlining the terms of the agreement signed by the prosecutor, Jonathan's attorney, and the trial judge. Although the court instructed that the document be provided for Jonathan's signature, Jonathan did not sign the stipulation.

[5]   The court then held a hearing on Jonathan's amenability to treatment in order to determine whether to sentence Jonathan as an adult or as a juvenile. After a lengthy proceeding, the court determined that Jonathan was not amenable to treatment, and the judge sentenced Jonathan to a maximum adult term of twenty-five years in the New Mexico Penitentiary. The court partially granted Jonathan's motion to vacate the sentence and reduced the sentence to twenty-two years incarceration, one-third of which was suspended.

## II.

### A.

[6] Jonathan challenges his guilty plea on the ground that the State and the trial court did not follow the Rules of Criminal Procedure. Specifically, Jonathan contends that his plea agreement did not comply with a form approved by this Court, Rule 9–408 NMRA 1997, and that the agreement does not contain his signature. Jonathan argues that the trial court should have vacated his conviction and withdrawn his guilty plea.

[7] "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and we review the trial court's denial of such a motion only for abuse of discretion." *State v. Garcia*, 1996 NMSC 013, ¶ 7, 121 N.M. 544, 546, 915 P.2d 300, 302. In order to prevail on appeal, Jonathan must demonstrate that the failure to comply with the prescribed plea procedure prejudiced his ability to knowingly and voluntarily enter his plea. *Id.* ¶ 11, 121 N.M. at 547, 915 P.2d at 303.

[8] Jonathan was charged as a juvenile in children's court. However, the State filed a notice of intent to invoke adult sentence, and the trial court found probable cause for the charges. "If a notice of intent to invoke an adult sentence has been filed ... [and] if there is probable cause to adjudicate the charges filed, a plea shall be taken as provided by the Rules of Criminal Procedure for the District Courts." Rule 10–222(C)(2) NMRA 1997.

[9] Rule 5–304(A) NMRA 1997 requires that "[a]ll plea and disposition agreements shall be submitted on a form substantially complying with the plea and disposition agreement approved by" this Court. We have approved such a form. Rule 9–408 NMRA 1997. Jonathan argues that the failure to utilize the form set out in Rule 9–408 invalidates the guilty plea. We conclude that it does not, so long as there are adequate indicia that the plea was knowing and voluntary.

[10] Rule 5–304 is primarily derived from Rule 11(e) of the Federal Rules of Criminal Procedure. *State v. Holtry*, 97 N.M. 221, 223, 638 P.2d 433, 435 (Ct.App.1981). It is significant that the federal rule does not require a writing, but rather requires "the disclosure of the agreement in open court." Fed.R.Crim.P. 11(e)(2). Similarly, federal courts have held that a plea agreement need not be reduced to writing. *See United States v. Delegal*, 678 F.2d 47, 50–51 (7th Cir.1982); *Pickett v. Henry*, 315 F.Supp. 1138, 1139 (E.D.N.C.1970) (stating that there is no constitutional requirement that a plea agreement be reduced to writing).

[11] The purpose of requiring a writing in a form approved by this Court is to ensure that prosecutorial promises are kept, that the plea agreement accurately reflects the bargain struck between the prosecutor and the defendant, that a defendant is adequately informed of the consequences of the plea, and that the plea agreement is not secretive. *See State v. Lucero*, 97 N.M. 346, 348–50, 639 P.2d 1200, 1202–04 (Ct.App. 1981); *State v. Lord*, 91 N.M. 353, 354–55, 573 P.2d 1208, 1209–10 (Ct.App.1977); *see also State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994) ("A plea agreement is a unique form of contract...."); *State v. Taylor*, 107 N.M. 66, 72, 752 P.2d 781, 787 (1988) ("The integral part of the plea bargaining process is negotiation and compromise which results in a negotiated sentence satisfying the law enforcement demands of the state and the ends of justice."), *overruled on other grounds, Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989); *State v. Santillanes*, 98 N.M. 448, 451, 649 P.2d 516, 519 (Ct.App.1982) ("Plea agreements, absent constitutional or statutory invalidity, are binding upon both parties...."). The rule serves to provide evidence that a plea is knowing and voluntary. *State v. Johnson*, 107 N.M. 356, 357, 758 P.2d 306, 307 (Ct.App.1988) ("We do not doubt that the requirement that a plea agreement be reduced to writing provides evidence that a guilty plea is voluntary and knowingly given. The rule, however, affords no more than that."). "Although the court must be certain the plea is knowing and voluntary, it is more reasonable to require substantial compliance rather than to require the trial courts to

strictly adhere to a script." *Garcia,* 121 N.M. at 547, 915 P.2d at 303. Accordingly, the rule does not establish a strict requirement, only requiring a form "substantially complying" with one approved by this Court. Rule 5–304(A). If there has been substantial compliance with the rules and the defendant acts knowingly and voluntarily, we will not invalidate a plea for a failure to strictly comply with the rules.

[12] In this case, the State read the agreement to the court on the record, thereby ensuring that the agreement was not secretive. In addition, the judge questioned both the defense counsel and Jonathan about the contents of the agreement, and neither protested that the contents of the agreement read to the court inaccurately reflected the parties' intentions. *Cf. Johnson,* 107 N.M. at 356, 758 P.2d at 306 (upholding a guilty plea and stating that "[Defendant] makes no assertion that the plea was either involuntary or unknowing. Nor does defendant assert that the state breached the plea and disposition agreement."). Further, Jonathan specifically denied that the State made any promises inducing a plea other than those read to the court, and he does not contend on appeal that the State failed to keep any promises. *See Lord,* 91 N.M. at 355, 573 P.2d at 1210 ("The nondisclosure waived the claim of an unkept promise by the State."). With respect to the lack of Jonathan's signature, we can find no prejudice because Jonathan personally admitted his guilt, on the record, to each of the counts contained in the agreement. *State v. Branch,* 129 Wash.2d 635, 919 P.2d 1228, 1233 (1996) (en banc) ("[T]he lack of a defendant's signature on a plea statement does not constitute a manifest injustice as a matter of law so long as the totality of circumstances demonstrates the defendant's plea and its waiver of rights is intelligently and voluntarily made, with full knowledge of its consequences."); *see State v. Day,* 91 N.M. 570, 577, 577 P.2d 878, 885 (Ct.App. 1978) ("The absence of a signed waiver is not dispositive of whether defendant waived his right to remain silent."). Finally, the judge personally addressed Jonathan in advising

him of the rights he would waive by entering his plea, *see* Rule 5–303(E), (F) NMRA 1997,[1] and recorded a stipulation, outlining the agreement and signed by the judge, the prosecutor, and the defense counsel, which substantially complied with Rule 9–408.

[13] Because of the thoroughness of the plea hearing, we conclude that there were sufficient assurances that Jonathan's plea was both knowing and voluntary. The failure to comply with the rules in this case did not result in any prejudice to Jonathan's substantial rights, and the purposes of Rule 5–304 were served. *See* Fed.R.Crim.P. 11(e) advisory committee's note on 1974 amendment ("The procedure described in subdivision (e) is designed to prevent abuse of plea discussions and agreements by providing appropriate and adequate safeguards.").

**B.**

[14] Jonathan also contends that the trial court failed to ensure that he understood the consequences of his plea and that, therefore, his plea was unknowing and invalid. Jonathan claims that the prosecution implied that he would not receive an adult sentence and that both the court and the prosecution misinformed him of the maximum penalty available pursuant to his plea.

[15] The record of the hearing does not indicate that the parties failed to consider the possibility that Jonathan might be sentenced as an adult rather than as a juvenile. Prior to negotiations with Jonathan, the State timely filed a notice of intent to invoke adult sentence. As an alleged youthful offender, Jonathan was clearly subject to an adult sentence at the discretion of the children's court. NMSA 1978, § 32A–2–20(A) (1995, prior to 1996 amendment) ("The court has the discretion to invoke either an adult sentence or juvenile sanctions on a youthful offender."). In addition, the trial judge had discretion to sentence Jonathan to a maximum adult sentence. Section 32A–2–20(D). Finally, the prosecutor and the court, ad-

---

1. Jonathan also challenges the failure to utilize the form set out in Rule 9–406 NMRA 1997 (reducing to writing the requirements of Rule 5–303). We need not address this challenge, however, because Rule 5–303 adequately ensures that a plea is knowing and voluntary, *Garcia,* 1996 NMSC 013, ¶ 9, 121 N.M. at 546–47, 915 P.2d at

302–03, and does not require the use of the form appearing in Rule 9–406. Rather, Rule 5–303 requires that the judge address the defendant personally, Rule 5–303(E), and that the court's colloquy with the defendant appear in a verbatim record, Rule 5–303(G). We are satisfied that the trial court complied with these requirements.

dressing Jonathan personally, informed Jonathan that sentencing would be in the court's discretion and that an adult sentence could be imposed. Jonathan stated to the judge that he understood the sentencing consequences. Thus, Jonathan was adequately informed that he could receive an adult sentence pursuant to his plea agreement.

[16] Nonetheless, the court and the prosecutor misinformed Jonathan of the maximum penalty available for the crimes to which he pleaded guilty. The State and the trial judge incorrectly informed Jonathan that the maximum possible sentence pursuant to his plea would be twenty-two-and-one-half years in prison. In fact, the maximum was twenty-five years, and the court imposed this maximum after the amenability hearing.

[17] "Failure to advise a defendant of the potential penalties presumptively affects defendant's substantial rights and renders the plea unknowing and involuntary." *Garcia*, 1996 NMSC 013, ¶ 24, 121 N.M. at 549, 915 P.2d at 305. However, the presumption of prejudice is not conclusive. *Garcia*, 1996 NMSC 013, ¶ 13, 121 N.M. at 547, 915 P.2d at 303 (stating that appellate courts review "each case on its own unique facts"). There is no prejudice to a defendant's substantial rights if the defendant receives a sentence equal to or less than the maximum as represented by the State or the court. *United States v. Alber*, 56 F.3d 1106, 1109 (9th Cir.1995) (finding no prejudice if defendant's sentence did not exceed the maximum as represented by the prosecutor or the court); *see Garcia*, 1996 NMSC 013, ¶ 18, 121 N.M. at 548, 915 P.2d at 304 ("[D]ue process is denied only if the defendant was actually unaware of the nature of the charges.") (internal quotation marks and citation omitted). The judge cured the error of imposing a maximum sentence greater than the maximum represented to Jonathan by amending the sentence to twenty-two years incarceration, in conformity with the representations of maximum sentence made by the court and the prosecutor. Further, since one-third of the sentence was deducted, NMSA 1978, § 31–18–15.1 (1993), the actual sentence imposed was less than sixteen years. The misinformation did not prejudice Jonathan's substantial rights, and we conclude that the guilty plea was both knowing

and voluntary. Therefore, we affirm the conviction and amended sentence.

### III.

[18] While the form of the plea agreement between the prosecutor and Jonathan did not conform to the Rules of Criminal Procedure, there was no prejudice to Jonathan's substantial rights because of sufficient precautions ensuring a knowing and voluntary plea. Similarly, although the trial court and the prosecutor misinformed Jonathan of the maximum sentence, Jonathan did not receive a sentence in excess of the representation made to him and entered his plea with knowledge that he could receive the sentence ultimately imposed by the trial court. We affirm the amended judgment and sentence.

[19] **IT IS SO ORDERED.**

BACA, SERNA and McKINNON, JJ., concur.